# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 5, 2013

Lyle W. Cayce
Clerk

No. 11-20803

KENNETH RICHARDS,

                         Petitioner – Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

                         Respondent – Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, GARZA, and OWEN, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Petitioner Kenneth Richards, a Texas state prisoner, exhausted his state remedies and moved to file a habeas corpus petition. The district court dismissed the application as time-barred because it was filed after the one-year deadline under 28 U.S.C. § 2244 for filing a 28 U.S.C. § 2254 application expired. Richards appeals, contending the district court erred by deeming the date the clerk of the court stamped his state post-conviction petition as received to be the date he filed the petition. Richards alleges under Texas law the pleadings of *pro se* inmates, including petitions for state post-conviction relief, are deemed filed at the time they are delivered to prison authorities, not at the time they are

No. 11-20803

stamped by the clerk of the court. Richards also asserts he is entitled to equitable tolling. In light of the Texas Court of Criminal Appeals holding in *Campbell v. State*, 320 S.W.3d 338, 339 (Tex. Crim. App. 2010), applying the prison mailbox rule to criminal cases, we REVERSE and REMAND.

## I

Richards was convicted of possessing a cell phone while an inmate of a correctional facility and sentenced to twenty-five years of incarceration. His direct appeal was unsuccessful, and on August 19, 2009, the Texas Court of Criminal Appeals declined review. Because Richards did not petition the Supreme Court for certiorari his conviction became final on November 17, 2009, at the end of the ninety-day period for filing a petition for certiorari. Richards sought state post-conviction relief, placing his petition in the prison mail system on October 12, 2010. On November 18, 2010, 37 days later, it was stamped received by the Texas Court of Criminal Appeals. The court denied relief on January 19, 2011.

On February 11, 2011, Richards mailed his § 2254 application to the federal district court. Thaler moved for summary judgment alleging that the application was untimely. Richards opposed the motion.

The parties disputed whether Richards filed his state post-conviction petition before the one-year statutory deadline for filing a § 2254 application expired. Richards argued that he filed the petition on October 12, 2010, the date prison records indicate he put the petition into the prison mail system. Thaler argued the petition was filed 37 days later on November 18, 2010, the date the petition was stamped as received by the state court. According to Richards, 329 days elapsed from the date the conviction became final—November 17, 2009—until the date he filed his state petition—October 12, 2010. The parties agreed 22 days elapsed between the date the state court denied post-conviction relief and Richards mailed his § 2254 application on February 11, 2011.

No. 11-20803

Richards argued that because only a total of 351 days, not counting the tolling period, elapsed after his conviction became final, his § 2254 petition was filed within the one-year limitations period and was thus timely.  Thaler argued because the state conviction petition was not filed until November 18, 2010, when stamped by the clerk of the court, Richards missed the one-year deadline for filing a § 2254 application.

The district court agreed with Thaler and held the application untimely, granted Thaler's motion for summary judgment, and dismissed the application. The district court also denied a COA.  Richards filed a timely notice of appeal.

We granted a COA on the following issues: "(1) whether in light of *Campbell v. State*, 320 S.W.3d 338, 339 (Tex. Crim. App. 2010), Richards' state post-conviction petition should be deemed filed on the date that he placed it into the prison mail system and (2) whether Richards is entitled to equitable tolling."

## II

When reviewing the denial of habeas relief, we review issues of law de novo. *Hardemon v. Quarterman*, 516 F.3d 272, 274 (5th Cir. 2008) (citing *Moody v. Johnson*, 139 F.3d 477, 480 (5th Cir. 1998)).  We review de novo an order dismissing a habeas petition as time-barred under the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *Causey v. Cain*, 450 F.3d 601, 603 (5th Cir. 2006).

## III

A person in state custody has one year to apply for a writ of habeas corpus in federal court.  28 U.S.C. § 2244(d)(1).  The one-year period begins to run, as relevant here, on the date the conviction became final at the conclusion of the time to seek direct review, § 2244(d)(1)(A), though the period is tolled while a properly filed state post-conviction petition is pending, § 2244(d)(2).  Where the applicant files his or her state post-conviction petition after the time for filing a

No. 11-20803

§ 2254 application has lapsed, the state petition does not operate to toll the one-year limitations period. *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

In *Houston v. Lack*, the Supreme Court held that a *pro se* prisoner's notice of appeal under Federal Rule of Appellate Procedure 4(a)(1) is deemed filed as of the date it is delivered to prison officials for mailing. 487 U.S. 266, 270 (1988).

> The situation of prisoners seeking to appeal without the aid of counsel is unique. Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30-day deadline. Unlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the *pro se* prisoner is forced to do so by his situation. And if other litigants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private express carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it. *Pro se* prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them. Worse, the *pro se* prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. No matter how far in advance the *pro se* prisoner delivers his notice to the prison authorities, he can never be *sure* that it will ultimately get stamped filed on time. And if there is a delay the prisoner suspects is attributable to the prison authorities, he is unlikely to have any means of proving it, for his confinement prevents him from monitoring the process sufficiently to distinguish delay on the part of prison authorities from slow mail service or the court clerk's failure to stamp the notice on the date received. Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to

whom he has access-the prison authorities-and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice.

*Id.* at 270–72.   We extended this rule, the "prison mailbox rule," to other submissions of *pro se* inmates.   *See, e.g., Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (holding § 2254 applications deemed filed on date inmate tenders petition to prison officials for mailing).

In *Coleman v. Johnson*, 184 F.3d 398 (5th Cir. 1999), however, we declined to apply the prison mailbox rule to a Texas post-conviction petition for the purpose of determining whether the petition tolled the statute of limitations under § 2244(d)(2).   We held, "when a prisoner asserts that his ability to file a federal habeas petition has been affected by a state proceeding, we will examine the facts to determine whether the prisoner is entitled to equitable tolling under § 2244(d)(1)."   *Id.* at 402.

In *Causey v. Cain* we clarified that *Coleman* was merely interpreting Texas law.   450 F.3d 601, 605–06 (5th Cir. 2006) ("[T]he *Coleman* decision was concerned with the imposition of a federal filing rule upon a sovereign state court.").   We held that when a state application is properly filed is a question of state law:

> *Coleman* does not require that we ignore the abundance of Louisiana case law following the prison mailbox rule.   Although its reasoning is less than clear, *Coleman* is best understood as an interpretation of Texas law. . . . This circuit, like most, holds that a properly filed state application for collateral review is one submitted according to the state's procedural requirements.   At the time this Court decided *Coleman*, Texas law was unclear on, and arguably averse to, the prison mailbox rule.   Implicit in *Coleman*'s decision not to extend the mailbox rule to . . . state habeas applications is the principle that state courts have the right to interpret state rules of filing and are not bound by *Houston*'s construction of federal filing rules.

*Id.* at 605 (internal citations, footnotes, and quotation marks omitted). Because Louisiana had chosen to adopt the prison mailbox rule for filings by *pro se* prisoners, under Louisiana law the petitioner's application was deemed filed when he gave it to the prison authorities and not when it was stamped by the court clerk. *Id.* at 606–07.

In *Howland v. Quarterman*, 507 F.3d 840, 841 (5th Cir. 2007), we considered whether, in light of *Warner v. Glass*, 135 S.W.3d 681, 684 (Tex. 2004), a Texas Supreme Court case applying the prison mailbox rule to prisoners who file civil actions under Texas' Inmate Litigation Act, the prison mailbox rule extends to Texas post-conviction petitions. We refused to extend the rule to state post-conviction petitions for two reasons. First, we noted that the Texas Court of Criminal Appeals had clearly explained that a state post-conviction petition was a criminal proceeding, not a civil action, and reasoned that Texas' adoption of the prison mailbox rule for civil cases did not affect the state's filing requirements for criminal matters. *Howland*, 507 F.3d at 844–45 (citing *Aranda v. District Clerk*, 207 S.W.3d 785, 786 (Tex. Crim. App. 2006)). Second, we explained *Warner* did not apply where there was no filing deadline. *Id.* at 845. In support of this determination, we cited an intermediate state appellate court's ruling that Rule 5 of the Texas Rules of Civil Procedure, which deems a pleading timely filed if it is placed in the mail on or before the filing deadline and filed by the court within ten days after the deadline, did not apply to a submission in a civil action where there was no filing deadline. *Id.* (citing *In re Hearn*, 137 S.W.3d 681, 685 (Tex. App.—San Antonio 2004, orig. proceeding)); *see* TEX. R. CIV. P. 5. Because Article 11.07 of the Texas Code of Criminal Procedure—the provision governing post-conviction petitions—also contained no filing deadline, we reasoned the prison mailbox rule would not apply even if *Warner* extended to criminal proceedings. *Howland*, 507 F.3d at 845.

No. 11-20803

Recently, in *Campbell v. State*, 320 S.W.3d 338, 344 (Tex. Crim. App. 2010), the Texas Court of Criminal Appeals held the prison mailbox rule also applies in criminal proceedings. A defendant challenged the appellate court's determination that his *pro se* notice of appeal was not timely filed and argued that the prison mailbox rule should apply. *Id.* at 340–41. The Texas Court of Criminal Appeals found persuasive the Supreme Court's observations in *Houston* that a prisoner lacks control over how and when a prison mails a notice of appeal, has no way of knowing if there has been a delay by prison staff, has no recourse in the case of a delay, and is unable to personally deliver the notice of appeal. *Id.* at 342–43. The court recognized that the Texas Supreme Court had applied the prison mailbox rule in civil cases. *Id.* at 343. The court went on to explain that it likewise would not "penalize a *pro se* inmate who timely delivers a document to the prison mailbox" and held "that the pleadings of *pro se* inmates shall be deemed filed at the time they are delivered to prison authorities for forwarding to the court clerk." *Id.* at 344.

*Campbell*'s application of the prison mailbox rule to criminal proceedings thus directly undermines our determination in *Howland* that the prison mailbox rule does not apply to Texas post-conviction petitions. *See Howland*, 507 F.3d at 844 ("[A] properly filed state application for collateral review is one submitted according to the state's procedural requirements.") (alterations removed); *Causey*, 450 F.3d at 606 (looking to state law to determine whether prison mailbox rule applies to Louisiana post-conviction petitions). The primary basis for our decision in *Howland*—that Texas does not apply the prison mailbox rule in criminal proceedings, of which post-conviction proceedings are a part—has been contradicted by *Campbell*'s holding that the rule does apply in criminal cases.

Thaler contends that even in criminal cases the prison mailbox rule is limited to filings that involve a deadline, relying on *Howland* as well as

No. 11-20803

pre-*Campbell* cases addressing the grace period described in Rule 5 of the Texas Code of Civil Procedure. As Thaler points out, in *Howland* we explained that the prison mailbox rule was inapplicable in civil cases where there was no filing deadline and thus would not apply to Texas post-conviction petitions even if the rule extended to criminal proceedings. *Howland*, 507 F.3d at 845. In *Howland*, however, we were being asked to extend a rule applicable to Texas civil cases to criminal proceedings. *See Howland*, 507 F.3d at 844. To reach our conclusion that the rule could not apply absent a filing deadline, we looked to a Texas case construing Texas' civil procedure rules. *See id.* at 845. In *Campbell*, however, the court did not limit its holding to situations involving filing deadlines, but instead extended it to "pleadings" of *pro se* inmates in criminal proceedings generally.

> Like our sister courts, we decline to penalize a *pro se* inmate who timely delivers a document to the prison mailbox. We find the analysis of the United States Supreme Court in *Houston v. Lack* to be compelling. . . . We hold that the pleadings of *pro se* inmates shall be deemed filed at the time they are delivered to prison authorities for forwarding to the court clerk.

*Campbell*, 320 S.W.3d at 343–44. Neither *Campbell* nor any other case restricts Texas' application of the prison mailbox rule in criminal cases to circumstances where there is a filing deadline.[1] We must apply *Campbell*'s holding that under Texas law the pleadings of *pro se* inmates, including petitions for state post-conviction relief, are deemed filed at the time they are delivered to prison authorities, not at the time they are stamped by the clerk of the court. *See*

---

[1] Indeed, the Texas Court of Criminal Appeals recently issued an order in a post-conviction proceeding citing *Campbell* and directing the trial court to determine when certain post-conviction petitions submitted under Article 11.07 "were delivered to prison authorities" and whether they were filed before other petitions were denied. *Ex parte Macon*, Nos. WR-76,956-05 & WR-76,956-06, 2012 WL 5363041, at * 1 (Tex. Crim. App. Oct. 31, 2012). Although this order is unpublished, it supports the proposition that in criminal proceedings, the Texas Court of Criminal Appeals did not intend to limit the prison mailbox rule to circumstances where there is a filing deadline.

No. 11-20803

*Jacobs v. Nat'l Drug Intelligence Ctr.,* 548 F.3d 375, 378 (5th Cir. 2008) (holding one panel may overturn another panel's decision where there is an intervening change in law).  Therefore, we hold under Texas law Richards' § 2254 application was deemed filed on October 12, 2010, the date he turned the application over to prison authorities to be filed.  Accordingly, we do not reach Richards' claim that he is entitled to equitable tolling.

## IV

For these reasons, we REVERSE and REMAND.